[No. 7173-1-III. Division Three. May 15, 1986.]

THE STATE OF WASHINGTON, *Petitioner,* v. DAVID
GELVIN, *Respondent.*

*Douglas S. Boole, Prosecuting Attorney,* and *Melanie Paige Romo, Deputy,* for petitioner.

*Scot D. Stuart* and *Letha J. Owens,* for respondent (appointed counsel for appeal).

McINTURFF, A.C.J.—David Gelvin was convicted in district court of driving while under the influence of alcohol and resisting arrest. He successfully appealed his motion to exclude testimony as to contents of a videotape; the Breathalyzer result was suppressed because the implied consent warnings also were given during the taping procedure. We granted discretionary review of the superior court order of remand. The State contends both the testimony and the Breathalyzer result were admissible even though the tape itself had been suppressed; it has not assigned error to the suppression of the tape. We reverse the order of remand and reinstate the conviction.

There are two statutes which are directly pertinent to the issue and one[1] which is collaterally relevant. The two principal statutes are RCW 9.73.050:

Intercepting, recording, or divulging private communication—Admissibility in evidence. Any information obtained in violation of RCW 9.73.030 or pursuant to any order issued under the provisions of RCW 9.73.040 shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with

---

[1]RCW 9.73.030 provides in part:

"Intercepting or recording private communication—Consent required—Exceptions. (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

". . .

"(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

"(2) Notwithstanding the provisions of subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, crime, or other disaster, or (b) which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands, . . . may be recorded with the consent of one party to the conversation.

"(3) Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: *Provided,* That if the conversation is to be recorded that said announcement shall also be recorded."

the permission of the person whose rights have been violated in an action brought for damages under the provisions of RCW 9.73.030 through 9.73.080, or in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security.

and RCW 9.73.090(1)(b):

Police and fire personnel exempted from RCW 9.73.030 through 9.73.080—Standards—Authorizations by judge or magistrate—Admissibility of material. (1) The provisions of RCW 9.73.030 through 9.73.080 *shall not apply* to police and fire personnel in the following instances:

. . .

(b) Video and/or sound recordings may be made of arrested persons by police officers responsible for making arrests or holding persons in custody before their first appearance in court. Such video and/or sound recordings shall conform strictly to the following:

(i) The arrested person shall be informed that such recording is being made and the statement so informing him shall be included in the recording;

(ii) The recording shall commence with an indication of the time of the beginning thereof and terminate with an indication of the time thereof;

(iii) At the commencement of the recording the arrested person shall be fully informed of his constitutional rights, and such statements informing him shall be included in the recording;

(iv) The recordings shall only be used for valid police or court activities.

. . .

(3) Communications or conversations *authorized* to be intercepted, recorded, or disclosed by this section shall *not be inadmissible under RCW 9.73.050.*

(Italics ours.) Several criteria have been developed through case law to determine whether testimony under these circumstances is admissible:

1. Whether the officer who testified was a participant in the illegal recording or whether his information was obtained independently of the illegal act.

2. Whether there has been substantial compliance with the statutory requirements and whether an issue has been

raised regarding police misconduct or unauthorized editing of the tape.

3. Whether portions of the tape or, as in this case, testimony, may be admitted if it falls within the exception of RCW 9.73.030(2), recordings of threats of extortion, blackmail or bodily harm.

### ADMISSIBILITY OF OFFICER'S TESTIMONY

In *State v. Williams,* 94 Wn.2d 531, 543, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980), the court considered the admissibility of an officer's testimony where tape recordings of a conversation had been ruled inadmissible. The opinion referenced *State v. Grant,* 9 Wn. App. 260, 511 P.2d 1013, *review denied,* 83 Wn.2d 1003 (1973), *cert. denied,* 419 U.S. 849, 42 L. Ed. 2d 78, 95 S. Ct. 87 (1974), where an officer, who had not participated in the illegally recorded conversation, was allowed to testify because he had obtained his information legally. In *Grant,* however, the court noted at page 267, "[h]ad [the officer] been a party to the illegal recording and taping, a different question would be presented." *Williams,* at 543.

▇ This situation arose in *Williams* where the court concluded at page 543:

> Unlike the situation in *Grant,* the federal agents and informant who participated in the conversations in the present case knew of, and took part in the illegal recordings of the conversations, and therefore obtained the information from the conversations in an unlawful manner. *See* RCW 9.73.030. Since the "legislature's primary purpose . . . was the protection of the privacy of individuals from *public dissemination,* even in the course of a public trial, of illegally obtained information" (italics ours) ([*State v.*] *Wanrow,* [88 Wn.2d 221, 559 P.2d 548 (1977)] at 233), the privacy act precludes the dissemination of this illegally obtained information—whether it is disseminated by introducing the tape recordings or the testimony of the officer or civilian informant who participated in the conversation. Accordingly, the federal agents and informant cannot testify as to the contents of the illegally recorded conversations.

Whether the booking procedure constitutes a "private conversation" so as to accord it the protection required under the privacy act is debatable. While the State raises this issue in its brief, it does not cite any authority to support its conclusion that a videotape is merely a recording of conduct and events which have taken place in a public forum. Since RCW 9.73.030 specifically refers to "private communications", the State's argument has some merit. We find additional case law which supports this contention in other jurisdictions, including *Avery v. State,* 15 Md. App. 520, 292 A.2d 728, 744 (1972), *cert. denied,* 410 U.S. 977, 36 L. Ed. 2d 173, 93 S. Ct. 1499 (1973), which held the Maryland privacy statute did not apply to the video interception of *conduct* of a person as opposed to words spoken in a private conversation. *Accord, Piqua v. Hinger,* 15 Ohio St. 2d 110, 238 N.E.2d 766, 767–68, *cert. denied,* 393 U.S. 1001, 21 L. Ed. 2d 466, 89 S. Ct. 484 (1968); *Palmer v. State,* 604 P.2d 1106, 1108 (Alaska 1979); *Lanford v. People,* 159 Colo. 36, 409 P.2d 829, 831–32 (1965); *State v. Finley,* 173 Mont. 162, 566 P.2d 1119, 1122 (1977). But, even if we were to conclude the videotape was not of conduct but of a "private conversation", there is precedent for admitting the testimony of the officers under the substantial compliance doctrine.

### SUBSTANTIAL COMPLIANCE

 If there has been substantial compliance with the statutory requirements, the tape would be admissible or, in this case, the testimony of the officers. In *State v. Rupe,* 101 Wn.2d 664, 685, 683 P.2d 571 (1984), the only defect in the taping procedure was the failure to specify the starting time. Noting the defendant had been advised of his rights and the fact the statement was being taped, the court ruled the resulting information was admissible. However, it noted at page 685, footnote 6:

> This is not to say that all taped statements that contain this defect (no starting time) will be admissible. Where the starting and ending times of a statement are

important in reviewing allegations of police misconduct or unauthorized editing of the tape, the time announcements may assume critical importance. No such allegations are present here.

This situation is similar to *Rupe*. Mr. Gelvin was advised he was being videotaped, and that announcement was included at the beginning of the tape. Although there was no ending time on the tape, there was substantial compliance, and no allegations of misconduct or unauthorized editing have been raised.[2]

Thus, we conclude the testimony of the officers was properly admitted in district court; it is unnecessary to remand to the trial court for another hearing.

The judgment of the Superior Court is reversed; the verdict of the jury is reinstated.

THOMPSON and REED, JJ., concur.

Review denied by Supreme Court July 8, 1986.

---

[2]Because we find admissibility of the testimony proper under *Rupe*, it is not necessary to address the State's argument under the RCW 9.73.030(2) exception, recording of threats of extortion, blackmail, or bodily harm.