[No. 14319-8-III.   Division Three.   November 21, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. MARC D. COSTELLO, *Appellant*.

---

[6]*Norton*, 25 Wn. App. at 380.

[7]*State v. Roxbury Dist. Court*, 29 Wn. App. 591, 595, 629 P.2d 1341 (1981).

*Paul J. Wasson*, for appellant.

*Steven M. Lowe, Prosecuting Attorney*, and *Paige L. Sully, Deputy*, for respondent.

SCHULTHEIS, J. — During a drug buy, an undercover police officer wore a body wire authorized for officer safety

pursuant to RCW 9.73.210.[1] The subsequent drug transaction led to Marc Costello's conviction for delivery of a controlled substance. On appeal, he contends the authorization for the body wire was deficient and that all information obtained during the buy, including the participating officer's visual observations, should have been suppressed. We affirm.

The relevant facts are not disputed. On March 1, 1994, Detective Rob Linman and another police officer asked Lieutenant Randy Carper to sign an authorization for a body wire. The officers brought with them an authorization form, already filled out, containing the name of the consenting party, Detective Linman; the name of the criminal suspect, Mr. Costello; the name of the recording officer; and the following "[f]acts supporting reasonable suspicion why consenting party may be placed in danger: Linman will be acting in an undercover capacity to purchase cocaine. Since undercover work is inheritantly [sic] dangerous and drug dealers are known to carry guns, an officer security wire is requested." Lieutenant Carper signed the authorization.

Later that day, Detective Linman, outfitted with a body wire, and confidential informant Steve Hixson went to Mr. Costello's apartment and bought an eighth ounce of cocaine from Mr. Costello. Three surveillance officers observed the transaction from a distance.

Mr. Costello was charged with one count of delivery of a controlled substance, RCW 69.50.401(a)(1)(i). At the beginning of his trial, he moved to suppress all evidence obtained on the day of the buy, based on a violation of RCW 9.73.210. In particular, he argued the body wire au-

---

[1]RCW 9.73.210 provides that police officers may self-authorize the recording of a private conversation when reasonably necessary to ensure officer safety:

"(1) If a police commander or officer above the rank of first line supervisor has reasonable suspicion that the safety of the consenting party is in danger, law enforcement personnel may, for the sole purpose of protecting the safety of the consenting party, intercept, transmit, or record a private conversation or communication concerning the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances . . . ."

thorization did not contain the names of all those who were expected to participate in the conversation, and did not specify the reasons for believing the consenting party would be in danger. The court denied the motion and Mr. Costello again moved to suppress after the State rested its case. After hearing testimony from Lieutenant Carper, the court denied the motion. The jury found Mr. Costello guilty as charged. His motions for arrest of judgment, new trial or reconsideration of sentence were denied and he now appeals the court's denials of his motions to suppress.

Essentially, Mr. Costello contends the authorization requirements of RCW 9.73.210 must be strictly followed and any failure to comply requires exclusion of all information obtained during the interception, including the participating officer's visual observations. Since Detective Linman was the only witness who observed the actual transaction between Mr. Costello and the confidential informant, his testimony was central to the State's case and highly prejudicial.

While Washington's privacy act generally prohibits the intercepting and recording of private communications, limited exceptions are authorized by statute. RCW 9.73.030, .090, .095, .210, .230; *State v. Jimenez*, 128 Wn.2d 720, 723, 911 P.2d 1337 (1996). One such exception is the interception allowed to protect the safety of the consenting party to a private communication during a drug investigation. RCW 9.73.210(1). Before officers can use a body wire pursuant to this statute, a police commander or officer above the rank of first line supervisor must complete a written authorization including the following information: (1) the date and time of the authorization; (2) all persons expected to participate in the conversation, "to the extent known"; (3) the expected date, location and approximate time of the conversation; and (4) "the reasons for believing the consenting party's safety will be in danger." RCW 9.73.210(2). The recorded interception cannot be used in any civil or criminal case and must be immediately destroyed unless (1) the recorded person permits

its use or (2) physical violence occurs during the interception (in which case it may be used in a civil action for personal injury or wrongful death or in a criminal prosecution for a serious violent offense committed against the consenting party). RCW 9.73.210(4), (6). Although the recording itself may not be used in court, "[n]othing in this section bars the admission of testimony of a participant in the communication or conversation unaided by information obtained pursuant to this section." RCW 9.73.210(5).

We agree with Mr. Costello that the authorization signed by Lieutenant Carper was invalid due to its lack of specificity. Although it contains the dates, times and locations required by RCW 9.73.210(2), it does not include all the names of the participants "to the extent known." Lieutenant Carper admitted at trial he knew a confidential informant was going to participate in the buy and he assumed the officers who filled out the authorization knew who their confidential informant was. Further, the authorization's conclusive language about the inherently dangerous nature of undercover work with drug dealers, who "are known to carry guns," is not a sufficiently specific reason to fear for Detective Linman's safety. No Washington cases address the specificity of the authorization requirements found in RCW 9.73.210, but other privacy act cases stress that the self-authorization statutes must be strictly followed for the authorizations to be valid. *State v. Jimenez*, 76 Wn. App. 647, 651, 888 P.2d 744 (1995), *rev'd on other grounds*, 128 Wn.2d 720, 911 P.2d 1337 (1996).

The illegally recorded conversation has since been destroyed and was never mentioned at trial. But Mr. Costello contends that failure to comply with the statute's authorization procedure requires exclusion of everything Detective Linman saw or heard during the illegal recording.

The two cases he cites for the proposition that the participating officer's observations must be excluded, *State*

*v. Salinas*[2] *and State v. Fjermestad*,[3] were recently distinguished in *Jimenez*, 128 Wn.2d at 726. Neither of the investigating officers in *Salinas* and *Fjermestad* made an attempt to comply with RCW 9.73.230, a self-authorization statute that allows for admission of conversation intercepted during a drug offense investigation. Generally speaking, any information obtained in violation of the privacy act is inadmissible. RCW 9.73.030, .050. A specific section of RCW 9.73.230(8), however, allows admission of a participant's testimony if that testimony is "unaided by information obtained solely by violation of RCW 9.73.030." *Jimenez* held that because the authorizing officers attempted to comply with RCW 9.73.230 and acted in good faith on the invalid authorization, any information the officers obtained during the interception was admissible, as long as the information was not obtained solely from the illegal recording. *Jimenez*, 128 Wn.2d at 726.

We interpret *Jimenez* to hold that, where officers make a genuine effort to comply with the privacy act, the admissibility of any information obtained is governed by the specific provisions for each type of interception. *Jimenez*, 128 Wn.2d at 726. Like RCW 9.73.230, RCW 9.73.210 allows for the admission of a participant's testimony if it is unaided by information obtained "pursuant to this section" from the recording. RCW 9.73.210(5). The questions we must address are whether Detective Linman's attempt to comply with RCW 9.73.210 was genuine and whether his subsequent testimony was aided by information obtained pursuant to that section.

We find that although the safety concerns in the body wire authorization request are conclusory and inadequate for authorization, they show a genuine attempt to describe the overriding fears of officers on undercover drug investigations. Likewise, the authorization's failure to

[2] 121 Wn.2d 689, 692-96, 853 P.2d 439 (1993).

[3] 114 Wn.2d 828, 836, 791 P.2d 897 (1990).

identify all the participants is not persuasive proof of a lack of good faith. *See Jimenez*, 128 Wn.2d at 723, 725-26. Consequently, we find that the officers genuinely attempted to comply with RCW 9.73.210.

Detective Linman testified from his visual observation of the transaction as well as from his memory of the conversation with Mr. Costello. According to *Jimenez*, when officers fail to obtain authorization pursuant to RCW 9.73.230 (assuming they made a genuine attempt to comply with the statute), the intercepted communication is inadmissible, but the "unaided evidence provision in the same section precludes the suppression of any other evidence." *Jimenez*, 128 Wn.2d at 726. The recorded conversation here was destroyed before trial, was never mentioned at trial, and apparently was not used to aid Detective Linman's testimony in any way. It follows that his testimony was properly admitted.

Affirmed.

SWEENEY, C.J., and THOMPSON, J., concur.